STATE OF NEVADA, APPELLANT, *v.* DIANE SILVA AND FRED E. SILVA, RESPONDENTS.

No. 5998

December 28, 1970                    478 P.2d 591

[Rehearing denied February 8, 1971]

*Harvey Dickerson,* Attorney General, and *Robert A. Groves,* Deputy Attorney General, of Carson City, for Appellant.

*Echeverria and Osborne* and *John T. Coffin,* of Reno, for Respondents.

*Russell W. McDonald,* of Carson City, Amicus Curiae.

*Joseph P. Reynolds,* of Reno, Amicus Curiae.

## OPINION

By the Court, THOMPSON, J.:

Wife and husband brought suit against the State to recover damages incurred by reason of the forcible rape of the wife by an inmate of the Peavine Honor Camp, a state facility. At the close of the evidence the district court directed a verdict against the State on the issue of liability and allowed the jury to decide only the question of damages. The jury awarded damages of $300,000 and $100,000 to the wife and husband, respectively. Judgment was duly entered. The State moved for a new trial upon the ground of excessive damages, and, if unsuccessful, for a reduction of each damage award to the statutory limit of $25,000. The district court found the damages to be within permissible limits and declared the statutory limitation of damages unconstitutional. Accordingly, the

State's motions were denied. The victors sought a post-judgment evidentiary hearing as to whether the State had purchased liability insurance in an amount greater than $25,000 for each person, and if so, whether such purchase waived the statutory limitation. That hearing, and other matters, were stayed by an order of this Court pending disposition of the State's appeal which had been filed.

The main issue is immunity from suit and the extent to which the State waived immunity by the enactment of NRS 41.031 et seq. Several subordinate questions must be resolved if we rule that the State does not enjoy immunity in the circumstances disclosed. We turn first to relate the relevant facts bearing on this issue.

1. In 1965 the State waived its immunity from liability and consented to civil actions, except those civil actions based upon the exercise or performance or the failure to exercise or perform discretionary functions or duties; as to these, immunity from liability was retained.[1] The Peavine Honor Camp was established by the Board of Prison Commissioners pursuant to the authority of NRS 209.475 for the housing of prisoners assigned to state conservation and rehabilitation work. Prisoners so assigned are thought to be good risks for work away from the confinement of the state prison. The thrust of the honor camp program is rehabilitation rather than punishment.

The State contends that the entire honor camp program involves the exercise of discretion within the contemplation of NRS 41.031(2). The decision to establish the camp was discretionary with the Board of Commissioners; the selection of inmates to be housed there was discretionary with the warden and his screening committee; and the method of operating the camp was discretionary with those charged with the duty of supervision. Accordingly, the State is immune from this action. Heavy reliance is placed upon the Washington

---

[1]NRS 41.031: "The State of Nevada hereby waives its immunity from liability and action and hereby consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against individuals and corporations, except as otherwise provided in NRS 41.032 . . . ."

NRS 41.032: "No action may be brought under NRS 41.031 or against the employee which is:

"1. . . . .

"2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any employee of any of these, whether or not the discretion involved is abused."

case of Evangelical United Breth. Church of Adna v. State, 407 P.2d 440 (1966). On the other hand, the respondents urge that the supervision and control of the honor camp was and is an operational function imposing upon the State the duty to exercise ordinary care, and for the breach of which liability may be found. Cf. Harrigan v. City of Reno, 86 Nev. 678, 475 P.2d 94 (1970). The distinction between discretionary and operational functions is obscure. The supervision and control of a state facility involves the exercise of some discretion. To rule, however, that the presence of discretion in the operation of a state facility creates an immunity within the intendment of NRS 41.032(2) would annihilate the waiver of immunity declared in NRS 41.031. In our judgment, this was not the legislative purpose.

Before the enactment of the statutory waiver of immunity, Nevada case law on the viability of the doctrine of sovereign immunity was uncertain and in flux. Walsh v. Clark Co. School Dist., 82 Nev. 414, 419 P.2d 774 (1966); Hardgrave v. State ex rel. Hwy. Dep't, 80 Nev. 74, 389 P.2d 249 (1964); Rice v. Clark County, 79 Nev. 253, 382 P.2d 605 (1963). The trend was toward the judicial abolition of that doctrine. Rice v. Clark County, supra. It is only fair to assume that the 1965 Legislature reacted to that trend, and elected to waive immunity within limits and impose a ceiling upon the recovery allowable to a claimant, rather than await further judicial action upon the subject. The apparent legislative thrust was to waive immunity and, correlatively, to strictly construe limitations upon that waiver.

With the legislative purpose in mind, our task becomes easier. In a close case we must favor a waiver of immunity and accommodate the legislative scheme. Only when we conclude that discretion alone is involved may we find immunity from suit. Although the selection of inmates for honor camp service may primarily be a discretionary act, the manner in which the camp is supervised and controlled is mainly operational in nature. Indeed, the very fact that such inmates are not released from prison to roam at will, but remain under state control for work assignment and honor camp living, establishes state recognition that control and supervision is essential. We hold, therefore, that the State is not immune from this suit.

2. As noted, the district court directed a verdict against the State on the issue of liability believing that reasonable

minds could not differ on the point.[2] Proof of negligence was not that certain. The record may be read to show that state personnel supervise the inmates during their working hours and at night when they were at the honor camp. Bed checks were to be made every two hours during the nighttime. The honor camp area was fenced and the gates sometimes locked. The gates were open on the night the rapist escaped because of the movement of fire crews and equipment engaged in fighting a forest fire. An expert witness testified favorably to the State with regard to the reasonableness of its security at the honor camp. The record may also be read to show a lack of due care in the security arrangements at the honor camp.

Moreover, there is a problem of foreseeability. The State earnestly contends that the independent depravation of the rapist was not foreseeable and that liability should not rest with the State where a third person is assaulted by one who elopes from the honor camp. Indeed, the State suggests that the court should have directed a verdict in its favor for this reason alone.

Was the risk of harm one reasonably to be perceived? Honor camp inmates are under the supervision and control of the State and are paid for their work. The rapist was thought by prison authorities to be a nocturnal prowler since he had been charged with several counts of burglary before his incarceration at the prison. He was in prison about seven months before his release for honor camp service. Female companionship is denied prison inmates and the consequences of this denial is a matter of concern to prison authorities. The honor camp was located near a populated subdivision in the City of Reno. On the other hand, the rapist was not known to be a sex-offender. His conduct at the prison had been exemplary.

In our view reasonable minds could reach different conclusions and the jury should have been allowed to decide liability. Neither side was entitled to a directed verdict. Accordingly, we must set aside the verdicts and remand for a new trial. However, there remain questions of importance to be resolved for retrial.

---

[2]The complaint alleges gross negligence. Why, we do not know since ordinary negligence is sufficient and NRS 41.035(1) does not allow punitive damages. In any event, the court ruled that the State was grossly negligent as a matter of law. For reasons stated in the body of the opinion we think that even ordinary negligence was a jury question in this case.

3. The district court declared the statutory damage limit of $25,000 for each claimant [NRS 41.035(1)] unconstitutional upon the ground that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The argument is this. Although it may be permissible for the State to place a ceiling upon the amount of damages recoverable, that ceiling must be expressed in terms of a percentage of the total damages sustained; otherwise, claimants are not treated equally insofar as the opportunity to be made whole is concerned. For example, any claimant whose damages do not exceed $25,000 has the opportunity to obtain a full recovery, whereas one whose damages exceed that amount has only the opportunity to recover a percentage of his loss. Thus, a dollar limitation upon recovery discriminates between injured claimants, whereas a percentage limitation would treat all claimants equally and not violate equal protection.

We do not see a constitutional problem here. The fault with the argument is the failure to distinguish between the right to recover and the amount of recovery. All persons injured through the negligence of the State have been granted the right to bring suit (except where immunity is retained), and this right is granted equally and without discrimination on any basis whatsoever. It seems to us quite impossible to devise a scheme of equality in the awards of damages. The "total damages sustained" by a claimant is an uncertain amount in any case. That amount is what negotiation or trial declares it to be, and the variation in result for substantially similar injuries is remarkable. A percentage of the "total damages sustained" is equally uncertain. In the nature of things, equality of treatment as to the amount of damages cannot be achieved, and in our view, the equal protection clause has no bearing upon the subject. Cf. Dandridge v. Williams, 397 U.S. 471 (1970). It was within the legislative power to limit recovery.

4. The respondents urge that the State may have waived the statutory limit upon recovery by purchasing liability insurance with limits in excess of the statutory amount. They did not plead waiver. By post-judgment motion they sought to discover the existence of insurance and the limits thereof. That hearing was never held because of the pendency of this appeal. Since this case must be tried anew we anticipate

that the district court will allow pleading amendments to present this issue. We should, therefore, express our view, and do so upon the assumption that the State has purchased liability insurance with limits in excess of the statutory ceiling upon recovery.

The legislature authorized the State to "insure itself against any liability arising under NRS 41.031." NRS 41.038. If liability is found in this case it is a liability under NRS 41.031, and the limit upon the recovery of any claimant for such liability is $25,000. NRS 41.035(1). In reading these sections together, 41.031, 41.038 and 41.035(1), we are compelled to conclude that the legislative authorization to insure was to the extent of $25,000 for each claimant, and no more. The purchasing of insurance with higher limits was not authorized and, if done, cannot be considered as a legislative waiver of the statutory limit.

The case of Taylor v. State and Univ., 73 Nev. 151, 311 P.2d 733 (1957), is not apposite. The court there discussed waiver of immunity by the purchasing of insurance. We are not here concerned with waiver of immunity. That was accomplished by legislative act in 1965 and a limit placed upon recovery. That limitation is constitutionally permissible and may not be enlarged except by the legislature.

Reversed and remanded for a new trial.

Zenoff, Batjer, and Mowbray, JJ., and Young, D. J., concur.