Al WILSON; Norman Harding, Independent School District No. I–89, a public corporation; the Home Indemnity Company, a corporation; and Phelix Scott, Appellees,

v.

Teresa GIPSON, mother and next friend of Dominga Michelle Gipson, a minor; Wayne Johnston and Edith Johnston, parents and next friends of Carroll A. Johnston, a minor; Janet S. Bailey, mother and next friend of Troy L. Kelley, a minor; Jo Anne Livingston, mother and next friend of John David Livingston, a minor; Joseph Manora and Odessa R. Manora, parents and next friends of Kareen Ralon Manora, deceased; Sgt. James E. Lewis and Brenda Joyce Lewis, parents and next friends of Angela Martin, deceased; Selma Mosley, mother and next friend of Calvin J. Mosley, a minor; James J. Motes and Margaret Parton Motes, parents and next friends of Paul Clinton Motes, deceased; James J. Motes and Margaret Parton Motes, parents and next friends of James Warren Motes, a minor; Nadine Page, mother and next friend of Robert Page, a minor; Howard B. Pepper and Debra L. Pepper, parents and next friends of Stacy Pepper, a minor; Richard McKnight and Cherry McKnight, parents and next friends of Marlow Tremaine Wallace, deceased; Shirley Ann Stoneking, mother and next friend of Lissa L. Woolsey, a minor; Shirley Ann Stoneking, mother and next friend of Meadow Woolsey, a minor, Appellants.

No. 62087.

Supreme Court of Oklahoma.

April 5, 1988.

in Spencer, Oklahoma, was malfunctioning. It exploded at approximately 12:15 P.M. while the children were eating lunch. Five children and one teacher died, and several other children were injured as a result of the explosion.

The parents of children injured and killed in the explosion filed suit against the Independent School District No. 89, three school district employees, and various manufacturers of the hot water tank and its component parts. The school district, its employees, and their insurer filed a petition for interpleader naming thirty-nine (39) injured or deceased children as defendants and the providers of medical care who had liens for care given to the children.

The insurance carrier tendered $300,-000.00 to the court as the school district's maximum liability pursuant to the school's insurance policy and 51 O.S.1981 § 151 et seq.

The trial court ruled that the limitation of damages pursuant to the Political Subdivision Tort Claims Act of Oklahoma did not violate either the Oklahoma Constitution or the United States Constitution. The court further ruled that the $300,000.00 payment to the court relieved the school district, its servants, agents, and employees, and their insurance carrier of all liability.

The court distributed funds for special damages and then divided up the remainder of approximately $219,000.00 by distributing $18,221.66 to each family of a child who died in the explosion, and then distributing the remainder of the funds to the injured children.

The parents and injured children appealed.

Gina L. Hendryx, John W. Norman, Inc., Oklahoma City, for appellants.

Edwin F. Garrison, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellees.

SUMMERS, Justice.

On January 19, 1982, a hot water heater in the cafeteria at Star Elementary School

I.

## APPLICATION OF POLITICAL SUBDIVISION TORT CLAIMS ACT

The parents' first assignment of error is that sovereign immunity does not confer any immunity to the school district because the operation of a public school and the

maintenance of a hot water heater are proprietary functions of government. We noted in *Williams v. State*, 678 P.2d 259 (Okl. 1984), that the doctrine of sovereign immunity remained undisturbed by our decision in *Vanderpool v. State*, 672 P.2d 1153 (Okl. 1983), until October 1, 1985. *Id.* 678 P.2d at 260 N.1. The case before us is governed by the applicable law prior to *Vanderpool v. State,* supra.

An analysis of proprietary and governmental functions is ordinarily not necessary because the Political Subdivision Tort Claims Act, 51 O.S.1981 §§ 151 *et seq.,* applied to both governmental and proprietary functions. 51 O.S. 1981 § 166; *Black v. Ball Janitorial Service Inc.,* 730 P.2d 510, 513–514 (Okl.1986). The Act provides that a school district is a "political subdivision" in applying the Act, and its application in the case before us is appropriate. 51 O.S.1981 § 152(6)(b). The issue of whether the maintenance of a public school hot water heater is a proprietary function is considered below with the parents' claims based on the Oklahoma Constitution.

## II.

### EQUAL PROTECTION CLAUSE CLAIM

■ The parents assert that the Political Subdivision Tort Claims Act violates the Equal Protection Clause of the Fourteenth Amendment. They claim that 51 O.S.1981 § 154, creates two arbitrary categories of claimants: those claimants who may recover up to $50,000.00 and those claimants who may recover less than $50,000.00 due to the number of claims arising out of a single occurrence. 51 O.S.1981 § 154(A) provides:

A. The liability of a political subdivision or an employee on claims within the scope of this act shall not exceed:

1. Twenty-five Thousand Dollars ($25,000.00) to any claimant for any number of claims for damage to or destruction of property, including consequential damages arising out of a single accident or occurrence;

2. Fifty Thousand Dollars ($50,000.00) to any claimant for all other claims arising out of a single accident or occurrence; or

3. Three Hundred Thousand Dollars ($300,000.00) for any number of claims arising out of a single occurrence or accident.

A legitimate governmental purpose is served by imposing a limit on the amount of damages recoverable from governmental entities. An Equal Protection Clause challenge to limited governmental liability due to the different amount of damages recoverable by victims of governmental tortfeasors as opposed to non-governmental tortfeasors was not successful in Wisconsin.

"The rationale that limited liability is needed to protect governmental functions is not entirely without pragmatic support. If public entities with substantial fiscal resources are involved the financial problem may be minimal. For small entities or those with more limited financial powers a judgment can have serious consequences. Val Alstyne, Governmental Tort Liability: A Decade of Change, 1966 U. of Ill.L.F. 919, 971 n. 365.

The legislative classification Stanhope challenges expresses a legislative balancing of two purposes: To compensate victims of government tortfeasors while at the same time protecting the public treasury.

We are unwilling to say that the legislature has no rational basis to fear that full monetary responsibility entails the risk of insolvency or intolerable tax burdens. Funds must be available in the public treasury to pay for essential governmental services; taxes must be kept at reasonable levels; it is for the legislature to choose how limited public funds will be spent. It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which

it believes benefits the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastating high judgments while permitting victims of public tortfeasors to recover their losses up to that limit. *Stanhope v. Brown County,* 90 Wis.2d 823, 280 N.W.2d 711, 719 (1979). See also, *Estate of Cargill v. City of Rochester,* [119 N.H. 661] 406 A.2d 704 (N.H.1979).

Nor did an Equal Protection Clause challenge to different amounts of damages recoverable by different classifications of victims of governmental tortfeasors meet with success.

> "It appears that the legislature has imposed a ceiling on the victim's recovery if the liability statute is of board [sic], general application, exposes the government to many claims, and exposes the government to the risk of great financial loss against which the government may not be able to insure itself at reasonable cost.
>
> It is the legislature's function to evaluate the risk, the extent of exposure to liability, the need to compensate citizens for injury, the availability of and cost of insurance, and the financial condition of the governmental units." *Sambs v. City of Brookfield,* 97 Wis.2d 356, 293 N.W.2d 504, 514 (1980).

In *State v. Silva,* 86 Nev. 911, 478 P.2d 591 (1970) the court rejected an Equal Protection Clause challenge to a statute limiting liability to $25,000.00.

> "For example, any claimant whose damages do not exceed $25,000 has the opportunity to obtain a full recovery, whereas one whose damages exceed that amount has only the opportunity to recover a percentage of his loss.
>
> ... All persons injured through the negligence of the State have been *granted* the right to bring suit (except where immunity is retained), and this right is granted equally and without discrimination on any basis whatsoever. It seems

to us quite impossible to devise a scheme of equality in the awards of damages. The 'total damages sustained' by a claimant is an uncertain amount in any case. That amount is what negotiation or trial declares it to be, and the variation in result for substantially similar injuries is remarkable. A percentage of the 'total damages sustained' is equally uncertain. In the nature of things, equality of treatment as to the amount of damages cannot be achieved, and in our view, the equal protection clause has no bearing upon the subject. Cf. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). It was within the legislative power to limit recovery. *Id.* 478 P.2d at 594.

In *Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986), the court rejected an Equal Protection Clause challenge to statutes limiting damages recoverable to victims of governmental tortfeasors.

> "We conclude that the Governmental Immunity Act limits the judgment that may be entered against a public entity and its employee to $150,000 for an injury to one person in a single occurrence and $400,000 for injuries to two or more persons in a single occurrence, that the Act further contemplates that the public entity rather than the public employee should be responsible for satisfying the judgment, and that the judgment limitations created by the Act do not violate equal protection of the laws. *Id.* 718 P.2d at 226.
>
> The legislative decision to limit the public entity's liability to $150,000 for any injury to one person and $400,000 for any injury to two or more persons in a single occurrence, therefore, proceeds from actual differences in the magnitude and character of the functions assumed by public entities and in the effect of greater potential liability exposure on the public entity's ability to continue its governmental functions.
>
> We have no hesitation in concluding that this statutory classification is reasonably

related to the governmental objective of providing fiscal certainty in carrying out the manifold responsibility of government." *Id.* 718 P.2d at 227–228.

Perfect equality of treatment in awarding damages to the victims of governmental tortfeasors cannot be achieved. *State v. Silva,* supra. A limit to the recovery of damages awarded to victims of governmental tortfeasors where multiple claims are possible is a proper legislative decision. *Sambs v. City of Brookfield,* supra. Imposing a limit to the recovery of damages to victims of governmental tortfeasors furthers a legitimate goal of compensating the victims while protecting the public treasury. *Stanhope v. Brown County,* supra. The legislative decision to limit the liability of a public entity to a specified sum for injury to one person, while limiting liability for two or more persons in a single occurrence, is reasonably related to a proper governmental objective. *Lee v. Colorado Department of Health,* supra.

We apply a rational basis standard of review to 51 O.S.1981 § 154. *Black v. Ball Janitorial Service, Inc.,* 730 P.2d at 513. See also, *Lee v. Colorado Department of Health,* 718 P.2d at 227. We conclude that 51 O.S.1981 § 154 has a rational basis in fact and bears a reasonable relationship to a legitimate governmental goal, and thus, does not violate the Equal Protection Clause.

■ The parents also assert that the amounts of $50,000.00 and $300,000.00 are arbitrary and that the statute violates the Equal Protection Clause by discriminating against victims where more than six victims are involved. The limitation of $300,-000.00 was enacted in 1978. 51 O.S.Supp. 1978 § 154. Approximately four years later the $300,000.00 limit was increased more than three-fold by the legislature to $1,000,000.00, and the $50,000.00 limit was increased to $100,000.00. 51 O.S.Supp.1982 § 154, (effective July 1, 1983). A legislature "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."

*Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Such action by the legislature does not amount to "invidious discrimination" amounting to a violation of the Equal Protection Clause. *Id.*

We do not view the $50,000.00 and $300,-000.00 limits as being unconstitutional. In accord is *Lee v. Colorado Department of Health,* supra, holding that limits of $150,-000.00 per person and $400,000.00 per occurrence do not violate the Equal Protection Clause.

### III.

### DUE PROCESS CLAUSE CLAIM

■ The parents contend that the Due Process Clause is violated by compelling children to attend school, and limiting liability where the children are injured or die as a result of school district tortfeasors. The doctrine of sovereign immunity does not violate the Due Process Clause. *Neal v. Donahue,* 611 P.2d 1125, 1129 (Okl.1980). We have applied the Political Subdivisions Tort Claims Act to school boards and school districts. See, *Robinson v. City of Bartlesville Board of Education,* 700 P.2d 1013 (Okl.1985); *Independent School District I–29 v. Crawford,* 688 P.2d 1291 (Okl. 1984); *Herweg v. Board of Education, Lawton Public Schools,* 673 P.2d 154 (Okl. 1983); *Lucas v. Independent School District No. 35,* 674 P.2d 1131 (Okl.1983); *Johns v. Wynnewood School Board of Education,* 656 P.2d 248 (Okl.1982); *Reirdon v. Wilburton Board of Education,* 611 P.2d 239 (Okl.1980). The decision is for the Legislature as to whether to retain sovereign immunity for a governmental entity. *Vanderpool v. State,* 672 P.2d 1153 (Okl. 1983). We find this contention to be without merit.

### IV.

### CLAIMS BASED ON THE OKLAHOMA CONSTITUTION

The parents assert that the Political Subdivision Tort Claims Act violates Art. II,

§ 6 of the Oklahoma Constitution which is as follows:

"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

We have held that the doctrine of sovereign immunity does not violate Art. II, § 6 of the Oklahoma Constitution. *Neal v. Donahue*, 611 P.2d 1125, 1128–1129 (Okl. 1980). *Griggs v. State ex rel. Oklahoma Department of Transportation*, 702 P.2d 1017, 1019 (Okl.1985).

The parents urge that the Tort Claims Act violates Art. 23, § 7 of the Oklahoma Constitution. That provision of the Oklahoma Constitution in effect at the time of the injuries sustained by the children was as follows:

"The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, provided however, that the Legislature may provide an amount of compensation under the Workmen's Compensation Law for death resulting from injuries suffered in employment covered by such law, in which case the compensation so provided shall be exclusive."

The doctrine of sovereign immunity was a well established principle of common law at the time the Oklahoma Constitution was created. In *Neal v. Donahue*, supra at 1129, we stated that the doctrine of sovereign immunity was a well established principle of common law when the Fourteenth Amendment was adopted. However, wrongful death actions were unknown at common law.

"Wrongful death actions were unknown at common law, and any right of action surviving the decedent exists by virtue of statutory enactment." *Thomas v. Cumberland Operating Co.*, 569 P.2d 974, 976 (Okl.1977).

When the Oklahoma Constitution was adopted the right of action to recover damages for wrongful death of a person was granted by Okl. Statutes 1893, §§ 4313 and 4314. See also, Compiled Statutes 1909, § 945, Revised Statutes 1910, § 5281; *F.W. Woolworth Co. v. Todd*, 204 Okl. 532, 231 P.2d 681 (1951).

"The constitution, Schedule Sec. 2, proposed to extend and continue in force all of the laws in force in the Territory of Oklahoma at the time of the admission of the state into the Union which were not repugnant to the constitution and not locally inapplicable. That, of course, included Section 4313, Oklahoma Statutes 1893. That was one legislative act which the framers of the constitution desired to keep intact, and to that end they included Section 7, Article 23 in the constitution. The intent and effect of that provision is that so long as the provisions of Sec. 7, Article 23, of the constitution remain as a part of the constitution, the legislature, or the people by initiative petition, may not withdraw, take away, annul, or repeal the provisions of said Section 4313, Oklahoma statutes of 1893." *F.W. Woolworth Co. v. Todd*, supra, 231 P.2d at 684.

Article 23, § 7 creates no cause of action for the wrongful death of a person. *Roberts v. Merrill*, 386 P.2d 780, 786 (Okl. 1963). The purpose of Art. 23, § 7 was to embody into the fundamental law, the constitution, the statutory right of action for wrongful death. *Roberts v. Merrill*, supra; *F.W. Woolworth Co. v. Todd*, supra. School districts, as a part of the sovereignty of Oklahoma, were entitled to sovereign immunity when Art. 23, § 7 was adopted.

"*James v. Trustees*, 18 Okl. 56, 90 P. 100, 13 L.R.A. (N.S.) 1219, 11 Ann.Cas. 938 [1907], holds that school districts are but auxiliary parts of the sovereignty, and the court declares it to be the law in Oklahoma that, in the absence of express statute imposing liability for negligence, there is no liability in a civil action for damages for neglect of public duty." *Consolidated School District No. 1 v. Wright*, 128 Okl. 193, 261 P. 953, 958 (1927).

Oklahoma Statutes 1893, §§ 4313 and 4314, did not provide for wrongful death actions against the sovereign.[1]  Cf. *Hammons v. Muskogee Medical Center Authority*, 697 P.2d 539 (Okl.1985) (Provisions of Political Subdivision Tort Claims Act control, if applicable, as opposed to statute which governed wrongful death actions).  Sovereign immunity was not abrogated by the wrongful death statutes in effect when Art. 23, § 7 was adopted.

■ However, the parents' claim may be characterized as a wrongful death cause of action based on an allegedly proprietary function of the political subdivision.  The parents assert that such cause of action existed prior to the Political Subdivision Tort Claims Act and is protected by Art. 23, § 7, from any statutory limit on recovery.  We find that the parents' assertion cannot prevail, however, because the maintenance of a public school water heater is a governmental function.

Our Constitution requires the Legislature to establish and maintain a system of public schools.  Okla. Const. Art. XIII, § 1.  To fulfill this mandate the Legislature has provided a system of schools for the benefit of the entire state and its citizen.  The Legislature has delegated powers to the Board of Education of each school district to execute the responsibilities of this system.  70 O.S.1981 § 5–117.  Section 5–117 gives the Board of Education the power to provide and operate cafeterias or other eating accommodations.  The Board of Education also has the power to "operate and maintain ... schoolhouses and school buildings...."  70 O.S.1981 § 5–117.

In holding that the transportation of pupils to and from the public schools was a purely governmental function, we set forth the following test:

> "The criterion should be whether or not the acts done are essential and necessary, and are intended for the purpose of carrying into effect the comprehensive educational program contemplated by the Constitution and statutes of this state, and, if so, the performance of those tasks is a governmental function, and not a private enterprise." *Consolidated School District No. 1 v. Wright.* 128 Okl. 193, 261 P. 953, 955 (1927).

The maintenance of a hot water heater is essential to the operation of any public school building in Oklahoma.  Maintenance of school facilities is essential to carrying into effect the comprehensive educational program.  Thus, maintenance of a hot water heater in a public school building is a purely governmental function.  The Political Subdivision Tort Claims Act does not conflict with Art. 23, § 7 of the Oklahoma Constitution in the case before us.

V.

## DUTY OF INSURER TO DEFEND

■ The parents assert that the insurance company which issued the policy to the school district had a duty to defend the district and its employees until payment of the limits of the policy via settlements or judgments.  The school district and insurance company tendered $300,000.00 to the court and requested that the court apportion the amount to the claimants.  The court conducted an evidentiary hearing and

---

1. Oklahoma Statutes 1893, §§ 4313 and 4314: "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission.  The action must be commenced within two years.  The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

   That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section four hundred and thirty-five of this chapter, is or has been at the time of his death in any other state or territory, or when, being a resident of this Territory, no personal representative is or has been appointed, the action provided in said section four hundred and thirty-five may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

found that the policy limit was $300,000.00 and that no other policies existed covering the school district for the alleged losses.[2] The court relieved the school district and insurance carrier from all liability and duty to defend pursuant to 51 O.S.1981 §§ 158(B), 161(A).[3] The parents contend that the language in the policy which states that "the company shall have the right and duty to defend any suit ..." requires the insurance company to defend the action until "the limit of the company's liability has been exhausted by payment of judgments or settlements."

An insurance company has a duty to defend its insured and settle claims in good faith. *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1977). An insurer's failure to defend the insured may give rise to an action against the insurer by the insured. *Lewis v. Farmers Insurance Co., Inc.*, 681 P.2d 67, 69 (Okl.1983). However, we are not concerned in the case before us with such an action brought by an insured against the insurer, but with a third party seeking to hold the insurer liable.

In *Fidelity and Casualty Co. of New York v. Southall*, 435 P.2d 119 (Okl.1967), we quoted the following with approval.

"... it has been held ... that a garnishment proceeding by judgment creditors of the insured *will not lie* against the insurer on the ground that *it was negligent or acted in bad faith in failing to settle the claims against the insured* for the reasons that *the insured's cause of action sounds in tort* and is therefore *an unliquidated tort claim* and that it is *not a chose in action subject to garnishment.* (Emphasis added)." *Id.* 435 P.2d at 122.

This view appears to be the "majority rule", *Lisiewski v. Countrywide Insurance Co.*, 75 Mich.App. 631, 255 N.W.2d 714, 716 (1977), and adopted by our Court of Appeals as well. *Cue v. Casualty Corp. of America*, 537 P.2d 349 (Okl.App.1975).

"An insurance company may have a duty to defend their insured in personal injury actions arising under the dramshop act

or as otherwise provided in the insurance contract. Clearly, this contractual obligation is not for the benefit of the injured party.

Similarly, the obligation of the insurance company to use good faith in attempting to reach a settlement agreement within policy limits would seem to run only to the insured, not the injured party." *Lisiewski v. Countrywide Insurance Co.*, 255 N.W.2d at 717.

A party may assert his own legal rights and interests, but may not assert a claim based on the rights or interests of third parties. *Oklahoma Alcoholic Beverage Control Board v. Parkhill Restaurants Inc.*, 669 P.2d 265 (Okl.1983). The parents may not complain of the insurance company's duty to defend the school district where the company pays the policy limit to the court for the court's distribution.

The orders of the trial court are affirmed.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, J., concurs in part, dissents in part.