ENTERPRISE INDUSTRIES, Inc., Plaintiff,

v.

The TEXAS COMPANY, Defendant.

Civ. A. No. 4076.

United States District Court

D. Connecticut.

Sept. 30, 1955.

Wallace R. Burke, Samuel Steinberg, Hartford, Conn., for plaintiff.

Day, Berry & Howard, Hartford, Conn., for defendant.

SMITH, Chief Judge.

In this private civil anti-trust treble damage action, claims under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, were dismissed. Trial was had on the remaining Clayton and Robinson-Patman Act claims. 15 U.S.C.A. § 12 et seq. Plaintiff was a gas station operator whose purchases from defendant were in commerce. Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239. It was established that in a gas war situation price allowances were made by defendant to its dealers in the Hartford area, competing with one another in the sale of defendant's Fire Chief and Sky Chief brands of gasoline, on condition that the dealers drop their retail prices to a level competitive with neighboring dealers in rival brands. By "competitive" was meant equal. During one period, plaintiff, declining to drop its retail prices, neither requested nor received the so-called allowances while competing Texaco dealers received them. At other periods some of the Texaco dealers competing with plaintiff received allowances which were greater than plaintiff's.

The elements necessary for recovery under the Clayton Act as amended by the Robinson-Patman Act are (1) Price discrimination (2) in (interstate) commerce, (3) which may substantially affect competition, (4) causing damage to plaintiff, (5) unless defendant can justify as necessary to meet an equally low price of a competitor.

Defendant has failed to justify under (5). There is no evidence that the price charged any of the competing dealers was not lower than a lawful price at which gas was offered to the dealers by other refiners. It may be that we could infer that the prices were somewhat similar. This is not enough. The burden is upon defendant to prove the price of its competing refiner if defendant seeks to rely on this defense. Standard Oil Co. v. Federal Trade Commission, supra. If accompanied by a price fixing agreement similar to that tied to Texas' "allowances" in fact if not in name, the price of the competitor might not be a lawful price. Moreover, Texas could justify discrimination only by a showing that it dropped its price to the other stations to meet an equally low price made available to those other stations by a competing oil company. In view of the short term station and equipment leases in effect with some stations, perhaps it is a fiction to speak of price competition at the oil company sale to the station level. That is the competitive level at which the justification is provided for defendant in the Act, however. The Act does not go so far as to allow discriminatory price cutting to enable a *buyer* to meet price competition, but only to enable the seller to meet a lawful price of the *seller's* competitor. The end effect is the same, perhaps, but the scheme adopted by Texas allows it, without first determining the price offered by its competitor, a flexibility that could result in undesirable discrimination between purchasers from Texas. The defense is not established.

Element (1)—price discrimination is shown here, defendant selling at lower prices to other dealers in competition with plaintiff. The opportunity offered to plaintiff to obtain rebates or allowances on the same gross profit after rent basis as the other dealers does not destroy the discrimination, for even if it be said to result in an opportunity to purchase gas at the same prices, which was not always true, since the net was based on a requirement of meeting the lowest price only of a narrow competitive area, it was conditioned on so meeting a price. This hampered plaintiff's freedom to set his own prices at retail, a restriction defendant had no right to impose.

Element (2) discrimination in interstate commerce is present. Standard Oil Co. v. Federal Trade Commission, supra, and cf. Moore v. Mead's Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145.

Element (3) needs little discussion. The effects on gallonage of price differentials in the same brand and grade of gas within an area no larger than the Greater Hartford area must be found to be substantial. Certainly defendant has not proved the contrary, and discrimination having been established, defendant bears the burden of proof on this issue. Moss, Inc. v. Federal Trade Commission, 2 Cir., 148 F.2d 378, 379. Federal Trade Commission v. Standard Brands, 2 Cir., 189 F.2d 510, 515.

Element (4) the damage to the plaintiff is satisfied by a showing that nine stations were so situated that a substantial number of car owners passed both one of the nine and plaintiff's station, and were therefore in competition with plaintiff.

There is no proof that any substantial amount of traffic by potential customers would pass both plaintiff's station and the Durkee Station in Wethersfield, the Preli and Leach Station at Main Street and New London Turnpike in Glastonbury, Mandell's Station at Harrison Place and Woodland Street, Hartford, 20th Century Station at 1051 New Britain Avenue, West Hartford, Tony's Service Station at New Park and Flatbush Avenue, West Hartford, or Karnosky's Station at Prospect Avenue and the Boulevard, West Hartford.

A study of the map and the places of employment mentioned in the testimony would seem to limit the competition in any possibly significant amount, to the stations of Pike, DeWolfe, Lamphier, Pierson, Sylvestre, Frank & Duby, Axelrod, Coiro, and Martin. Although generally in the same competitive area for which tank wagon prices are normally uniform, there is no probability of direct competition between plaintiff's station and the other six named.

■ To the extent that any of the nine named competing stations received an allowance greater than plaintiff, plaintiff was damaged in its ability to compete with that station. It is of course impossible to say how many gallons of business the other stations took away from plaintiff by ability better to compete because of lower gasoline costs, for a substantial portion of plaintiff's business was non-competitive with the other Texas stations and was carried on at a profitable price spread even without the allowance or with a lower allowance than the others. There is the further complication that plaintiff would not have willingly dropped its price to the level of the competing dealers even had it received the allowance in full, preferring to keep its price up to gain the advantage of a larger profit spread for the non-competitive greater portion of its business. Plaintiff preferred to work on a lower gallonage with a gross of about 7½¢ a gallon rather than on a higher gallonage at a competitive price, which with allowance would bring it a gross of 4¢. It was peculiarly well situated for such a program, so far as transient customers were concerned, for it was the first station after a long stretch of parkway, and competitive prices of 6 or 7¢ cheaper, even if available in its immediate neighborhood, were unknown to most of the transient trade as it reached its station. Realization of the poor bargain obtained at this Texaco station on passing price

signs within the next quarter mile naturally failed to endear the Texas Company to the transient motorist who had been had, but Texas' retaliation by price discrimination against plaintiff as the effect of its Chicago plan would seem a violation of the Clayton Act, as amended, if it were indeed the purpose and effect of its dealer allowances in this area. Had plaintiff been able to purchase at the lower price offered to its competitors it would have had the benefit of the allowance on all the gas purchased by it and could have used it competitively in any way it wished, if not price wise perhaps in furnishing additional service to neighborhood customers, or other inducements to win them back from the competing dealers, as it had attempted during the early days of the gas war. The measure of damages may well be taken therefore as the amount of the largest price differential for each period in which differentials were granted, from June 1950 to June 1952 inclusive. Cf. Arden Sales Corp. v. Gus Blass Co., 8 Cir., 150 F.2d 988, 161 A.L.R. 370.

[Statistics omitted.]

Counsel may submit a tabulation of gallons bought by plaintiff from defendant in these periods, and a similar computation for Sky Chief gasoline, together with a sum of the results. If counsel are unable to agree on the accuracy of the tabulation, the case may be reopened for the sole purpose of admitting the invoices in evidence.

The pari delicto defense is not greatly favored in anti-trust cases, Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219; Interborough News Co. v. Curtis Pub. Co. et al., D.C.S.D.N.Y., 108 F.Supp. 768, 770, and would not be applicable here in any case, for plaintiff was far from an equal partner in the price discrimination even in the periods when it received allowances, defendant having developed and enforced its "Chicago Plan" of which plaintiff was, if anything, a victim.

Plaintiff is entitled to judgment in an amount three times the total of the overcharges, a reasonable attorney's fee, and costs.