Request of the Senate
No. 7804

## OPINION OF THE JUSTICES

June 20, 1977

The following resolution was adopted by the senate on May 19, 1977, and filed with the supreme court on May 23, 1977:

"Whereas, there is pending in the Senate, Senate Bill Number 75 'An Act imposing certain limitations on oil suppliers doing business in the state'; and

"Whereas, the Senate Committee on Energy and Consumer Affairs has recommended that the bill be passed with an amendment; and

"Whereas, doubt has been expressed as to the constitutionality of the provisions of said bill and the proposed amendment; now, therefore, be it

"Resolved by the Senate:

"That the justices of the supreme court be respectfully requested to give their opinion on the following important questions of law:

"1. Can the General Court within the provisions of the constitution of New Hampshire enact a statute as proposed in Senate Bill Number 75 with its amendments?

"2. Would any provision of the Constitution of the United States be violated by the provision of this bill and its amendment?

"Further resolve that the clerk of the Senate be instructed to transmit to the clerk of the Supreme Court 6 copies of this resolution and 6 copies of Senate Bill Number 75 together with the proposed amendment."

The following answers were returned:

*To The Honorable Senate:*

The undersigned justices of the supreme court submit the following answers to the questions contained in your resolution submitted to this court on May 23, 1977. Memoranda on behalf of various interested individuals and corporations were filed on or before June 1, 1977, in accordance with the previous order of this court.

The questions submitted to this court are: "Can the general court within the provisions of the constitution of New Hampshire

enact a statute as proposed in Senate Bill Number 75 with its amendments?" and "Would any provision of the Constitution of the United States be violated by the provisions of this bill and its amendments?"

1. N.H. Const. pt. II, art. 83.

■ Under N.H. Const. pt. II, art. 83, the general court may enact laws "to prevent the operations within the state of all . . . trusts and corporations . . . who endeavor to raise the price of any article of commerce or to destroy free and fair competition . . . ." This broad mandate allows the general court to enact laws which prevent abuse in the marketplace and promote free competition. Senate bill 75, which imposes certain limitations on oil suppliers doing business in the state, is within the power of the general court. Other statutes have been enacted by the legislature to promote free competition. *See* RSA 356:2, which outlaws all trusts which restrict trade or commerce, and RSA ch. 358, the Unfair Sales Act, prohibiting wholesalers and retailers from selling below the wholesale or retail price, and which parallels the requirement of RSA 339-C:12 of the proposed bill. This bill will amend various provisions of RSA ch. 339-C (Supp. 1975), regulating gasoline franchises. The existence of other nonconflicting statutes which promote free and fair competition does not preclude the general court from enacting the proposed bill. *Brunswick Corp. v. Pueblo Bowl-o-Mat., Inc.*, 429 U.S. 477 (1977).

2. Due Process of Law.

■■ The function of courts in reviewing state economic legislation is limited, the wisdom and expediency of statutes are not subject to judicial review. If there is an evil to be corrected, and the legislative measure enacted in response is rational and does not abridge fundamental rights, the statute is constitutional. *Opinion of the Justices*, 102 N.H. 106, 108, 151 A.2d 236, 238 (1959); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488 (1954). Although some contend that the bill may not succeed completely in achieving its purpose of promoting free and fair competition, the general court may reasonably conclude that suppliers' control of the retail gasoline market would adversely affect free competition. Statistics presented to the Senate Committee on Energy and Consumer Affairs show a 300% increase in company-operated stations from 1974 to 1976. (Mobil Oil Corporation exhibit B, at 2.) This increase, coupled with a 25% decrease in the number of stations

leased to dealers, may well indicate to the general court that suppliers' operation of retail outlets is an increasing danger to free competition and thus merits curtailment. Limiting suppliers in the retail marketplace is a rational means of preventing monopolistic control of the retail gasoline market. The bill's requirements of uniform extension of voluntary allowances to dealers and equitable allocation of petroleum products would prevent suppliers from giving favorable treatment to some retail dealers to the detriment of others, thus promoting fair competition.

3. Equal Protection of the Law.

■■ Unless a legislative classification is drawn upon an inherently suspect distinction, or abridges fundamental personal rights, the sole requirement is that the challenged classification rationally relates to a legitimate state interest. *Valley Bank v. State*, 115 N.H. 151, 154, 335 A.2d 652, 654 (1975); *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Senate bill 75, which prohibits suppliers of petroleum products as a class from operating retail gasoline stations, involves neither a suspect classification nor a fundamental right. Because the legislation may promote free and fair competition by eliminating suppliers from the retail marketplace, the classification is rational and sufficiently related to the achievement of the legislative goal.

4. Just Compensation Clause.

■■ Senate bill 75 if applied prospectively only is not a compensable taking, but rather a permissible legislative regulation. A regulation becomes a taking when it rises to the level where private property is appropriated for public use. The amended bill would bar suppliers from one particular phase of business—retail operations. They may still lease or sell their retail outlets. Deprivation of the most profitable use of property does not necessarily constitute a taking. *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168 (1958). The restrictions imposed by Senate bill 75 applied prospectively would not constitute a taking, because suppliers may use their property for retail purposes so long as they do not operate the stations themselves or through company employees. The property may still be owned; only its mode of operation is altered.

In our opinion, however, the proposed legislation, if applied retrospectively to the thirteen retail gasoline stations which are presently operated by suppliers would violate N.H. Const. pt. I,

art. 2 and N.H. Const. pt. I, art. 23 because it takes away the property right of suppliers in existing retail businesses and is not justified under N.H. Const. pt. II, art. 83. Although they may still own the stations and may lease them, they must nevertheless divest themselves of their existing retail businesses which in themselves are property rights.

### 5. Commerce Clause.

■■ The state may regulate matters of local concern if there is no discrimination against interstate commerce, a state interest is being served, and that interest outweighs any national interest in the prevention of state restrictions. *Cities Service Co. v. Peerless Co.,* 340 U.S. 179, 186–87 (1950). Unlike the statutes struck down in *H. P. Hood & Sons v. DuMond,* 336 U.S. 525 (1949), and *Baldwin v. G.A.F. Seelig,,* 294 U.S. 511 (1935), the purpose of Senate bill 75 is to preserve free competition, not to protect local economic interests by discriminating against interstate commerce. In *Dean Milk Co. v. Madison,* 340 U.S. 349 (1951), a statute which effectively raised an economic bar to protect local industries was struck down as a violation of the commerce clause. Here, the statute even-handedly excludes all New Hampshire and out-of-state suppliers from retail operations. Products may flow unrestrictedly in interstate commerce under the proposed bill; the only limitation is placed upon the mode of retail operation within the state. An out-of-state nonsupplier may operate retail gasoline stations. Thus, there is no discrimination against out-of-state interests, no burden on the free flow of goods in commerce, and the state's goal of promoting free competition is furthered. The Maryland Court of Appeals, in upholding a similar statute, stated "it has long been recognized that the states have the power to pass legislation to promote competition by preventing monopolistic activity in restraint of trade." *Governor of Maryland v. Exxon Corp.,* 370 A.2d 1102, 1116 (1977).

### 6. Preemption.

#### a. Federal Emergency Petroleum Allocation Act.

■ Senate bill 75 is proposed to promote free competition, provide for the uniform availability of voluntary allowances and rental equipment, and require that petroleum products be allocated on an equitable basis during periods of shortage. The Federal Emergency Petroleum Allocation Act, 15 U.S.C. §§ 751–756 (Supp. 1975), provides that regulations for the equitable allocation of re-

fined petroleum products will be promulgated. Under 15 U.S.C. § 753(c)(1)(A), the mandatory allocation programs must be structured so as to allocate among marketers an amount based on the amount sold to them during a specified base period, with a pro-rata reduction in allocation when there is an insufficient supply to meet the demand for the amount purchased during the specified base period. The act attempts to ensure the "equitable distribution of . . . refined petroleum products at equitable prices among all . . . sectors of the petroleum industry." 15 U.S.C. § 753(b)(1)(F). Senate bill 75's proposed RSA 339-C:11, similarly would require that suppliers and distributors allocate all petroleum products during periods of severe shortage on a nondiscriminatory and equitable basis."

The federal act specifically preempts only those state regulations and laws which directly conflict with regulations promulgated under the act. 15 U.S.C. § 755(b). Allocation under the proposed bill would be on an equitable and nondiscriminatory basis. As long as enforcement of this general standard is accomplished in accordance with federal regulations promulgated under the Federal Petroleum Allocation Act, the proposed bill does not conflict with the act and is not preempted. The existence of a conflict cannot be assumed where no specific rules for the enforcement of the standard have been promulgated. *Rice v. Board of Trade,* 331 U.S. 247, 255 (1947). A similar statute was upheld as harmonious with the federal act which "expressly preserves the power of the states to regulate the allocation of refined petroleum products." *Governor of Maryland v. Exxon Corp.,* 370 A.2d 1102, 1120–21 (1977).

b. Robinson-Patman Act.

RSA 339-C:11 of the proposed bill would require that suppliers and distributors extend voluntary allowances and equipment rentals uniformly to all of their dealers. "Voluntary allowances" have been construed to mean "temporary price reductions in the wholesale price to a retail dealer to enable the dealer to meet the lower price of a competing retail dealer." *Governor of Maryland v. Exxon Corp.,* 370 A.2d 1102, 1122 (1977). Section 2(a) of the Clayton Act, amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), states that persons cannot discriminate in price between different purchasers when the effect of the discrimination will lessen competition. A defense to a charge of price discrimination is provided to a seller by § 2(b). The seller may show that his

lower price "was made in good faith to meet an equally low price of a competitor." The bill's requirement of uniform extension of voluntary allowances does not conflict with this federal defense.

The § 2(b) defense is not available to a supplier granting a discriminatory price cut to a dealer enabling it to meet a second dealer's lower price where the second dealer did not receive a price cut from its supplier. *Federal Trade Comm'n v. Sun Oil Co.*, 371 U.S. 505, 529 (1963). The Supreme Court did not decide, however, if the § 2(b) defense could be raised when a seller lowers the price for its dealer to meet a price cut made by the seller's competitor to the dealer of that competitor. Lower federal courts have disagreed on this point. *See Enterprise Indus. v. Texas Co.*, 136 F. Supp. 420 (D. Conn. 1955), *rev'd on other grounds*, 240 F.2d 457 (2d Cir.), *cert. denied*, 353 U.S. 965 (1957), and *Bargain Car Wash, Inc. v. Standard Oil Co.*, 466 F.2d 1163 (7th Cir. 1972). We adopt the conclusion of the Maryland Court of Appeals that "the § 2(b) defense is available only where the discriminatory price reduction is to meet the equally low price offered to *the same buyer* by a competing seller," (*citing Enterprise*, 136 F. Supp. at 421.) *Governor of Maryland v. Exxon Corp.*, 370 A.2d 1102, 1124 (1977).

Senate bill 75 requires that voluntary allowances, which are the price reductions granted to retail dealers to meet the lower price of other retail dealers, be extended uniformly to all dealers purchasing from the supplier. The § 2(b) defense is available only when a seller lowers the price to meet the price offered to the same dealer by a competitor of the seller. Thus there is no conflict with the provisions of the Robinson-Patman Act.

7. Void for Vagueness.

■■■■■■ "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Harriss*, 347 U.S. 612, 617 (1954). The statute need not be precise, but simply "be expressed in language as specific as the subject will allow." *State v. Hewitt*, 116 N.H. 711, 366 A.2d 487 (1976). When a statute regulates business activity, the standard of ordinary intelligence is ordinary commercial knowledge. Courts may reasonably construe the statute to render it constitutionally definite. *United States v. Harriss*, 347 U.S. at 618. The provisions of the proposed bill are defined with

sufficient precision for a person with ordinary commercial knowledge to determine what conduct is required or prohibited. We agree with the determination of the Maryland Court of Appeals that the various terms of the act such as "voluntary allowances," "nondiscriminatory and equitable basis," and "equipment rental" are sufficiently understandable so as not to be unconstitutionally vague. *Governor of Maryland v. Exxon Corp.*, 370 A.2d 1102, 1126 (1977). Two definitions may need clarification: the definition of "distributor" in the amendment to the proposed bill may still be subsumed by the definition of "supplier." This confusion can be remedied by changing definition VI, "supplier," from "petroleum products *or* the sale . . ." to "petroleum products *for* the sale . . ." (emphasis added).

To the extent that the proposed bill would apply retrospectively to gasoline stations already operated by suppliers, it is unconstitutional. Otherwise, the answer to your first question is, "Yes, the general court may enact the statute proposed in Senate bill 75 as amended under the constitution of New Hampshire." The proposed bill raises many constitutional questions that may be more sharply focused in the context of a litigated case with a record, and, hopefully, some legislative findings or history. Your second question is answered, "No, the proposed bill does not violate any provision of the Constitution of the United States." The second question would be definitively answered by the federal judicial system should the Supreme Court review the decision of the Maryland Court of Appeals in *Governor of Maryland v. Exxon Corp.*, 370 A.2d 1102 (1977), now on appeal.

WILLIAM A. GRIMES
MAURICE P. BOIS
CHARLES G. DOUGLAS III

*To The Honorable Senate:*

The undersigned justices of the supreme court return the following reply to the questions presented in your resolution adopted on May 19, 1977, and filed in this court on May 23, 1977.

We conclude that the proposed statute is constitutional in all respects and therefore the answer to your first question is "Yes"; the answer to your second question is "No." For the purpose of determining whether the proposed bill violates the "just compensation" clause of the fifth amendment to the United States Constitution as it applies to the states through the fourteenth amendment

and part I, article 12 of the New Hampshire Constitution, the majority advisory opinion states that to the extent that the bill applies prospectively it is a "permissible legislative regulation" and not an unconstitutional taking of property without just compensation. However, as applied retrospectively, that is, to the suppliers which presently operate thirteen retail gas stations in the state, the proposed statute is, according to the majority, unconstitutional.

The majority's treatment of this issue is unsound. A comprehensive and award-winning law review article, which the majority does not cite, clearly concludes that even statutes requiring suppliers to divest themselves completely of retail outlets they already own do not violate the prohibitions against taking property without just compensation. Note, *Gasoline Divestiture Statutes: A Preliminary Constitutional and Economic Assessment*, 28 Vand. L. Rev. 1277, 1297–98 (1975). A fortiori, Senate bill 75, which is substantially less restrictive (in that it only requires present suppliers to cease "operating" the stations themselves) is constitutional.

In explaining why Senate bill 75 is a "permissible legislative regulation," the majority states "[t]hey may still lease or sell their retail outlets." The "they" can only refer to the suppliers who already operate the thirteen stations. It is analytically difficult to understand how the majority can state first that the proposed statute would be a constitutional regulation as applied to those suppliers in a position to "lease or sell their retail outlets" and then turn around in the next paragraph and assert that the statute, if applied to those very same suppliers, would be unconstitutional.

The majority does not distinguish *Opinion of the Justices,* 103 N.H. 268, 169 A.2d 762 (1961). In that case this court unanimously agreed that a statute requiring the removal of existing billboards and signs located along interstate highways would be constitutional. We stated "[t]he argument that the proposed law would deprive owners of property without compensation and would operate retrospectively does not require extended consideration." *Id.* at 271, 169 A.2d at 765. No substantive distinction exists between the impact of that legislation and the consequences of the statute proposed in this case.

Recently, in a comprehensive, well-reasoned opinion, the Court of Appeals of Maryland sustained a statute—virtually identical to Senate bill 75—against the same constitutional objections raised in this case. *Governor of Maryland v. Exxon Corp.,* 370 A.2d 1102

(1977). That opinion, although consistently cited by the majority, is square authority for the position that the proposed statute is constitutional in all respects.

FRANK R. KENISON
EDWARD J. LAMPRON

Stacey W. Cole, Executive Director of New Hampshire Petroleum Council, filed memorandum.

Wilfred H. Hall, Executive Director of Independent Oil Men's Association of New England, filed memorandum.

*Donald L. Stone,* of Pelham, N.Y., for Exxon Corporation, filed memorandum.

*William C. Whittemore,* of Scarsdale, N.Y., for Mobil Oil Corporation, filed memorandum.