Request of the Senate
No. 7848

## OPINION OF THE JUSTICES

October 13, 1977

750

The following resolution was adopted by the senate on July 12, 1977, and filed with the supreme court on July 14, 1977:

"WHEREAS, there is pending in the Senate, House Bill Number 439, 'An Act authorizing the water supply and pollution control commission to implement the provisions of RSA 146-A relative to oil spillage; establishing the New Hampshire Oil Pollution Control Fund; and making an appropriation therefor'; and

"WHEREAS, doubt has been expressed as to the constitutionality of the provisions of said bill; now, therefore, be it

"RESOLVED by the Senate, that the justices of the supreme court be respectfully requested to give their opinion on the following important questions of law:

"1. Can the general court within the provisions of the constitution of New Hampshire enact a statute as proposed by House Bill 439, which provides for the establishment of an oil pollution control fund to be funded by license fees, penalties or other fees and changes [sic] generated by the chapter as well as any federal or other funds which are made available for the purpose of oil pollution control?

"2. Can the general court impose a contingent annual license fee on an operator of an oil terminal facility having a storage capacity in excess of 500 barrels, within the framework of the provisions of the constitution of New Hampshire?

"3. Would the provisions of this bill impose any unwarranted restrictions on interstate commerce in violation of the commerce clause of the constitution of the United States?

"4. Would any provision of the constitution of the United States or of this state be violated by the provisions of this bill?

"Further resolved that the clerk of the Senate be instructed to transmit to the clerk of the supreme court 6 copies of this resolution and 6 copies of House Bill 439 as amended by the Senate Finance Committee."

The following answers were returned:

*To the Honorable Senate:*

The undersigned justices of the supreme court submit the following answers to the questions contained in your resolution submitted to this court on July 14, 1977.

## I

■■ House bill 439 creates a specific tax of one cent per barrel on the operators of oil terminal facilities having storage capacities of over 500 barrels. The purpose of the tax is to establish a fund to finance the activities of the pollution control commission. Our constitution requires that all taxes be proportionate and reasonable, N.H. Const. pt. II, art. 5—that is, equal in valuation and uniform in rate, *Opinion of the Justices,* 82 N.H. 561, 574, 138 A. 284, 291 (1927), and just, *Opinion of the Justices,* 4 N.H. 565, 570 (1829). The legislature has liberal powers to create classifications among taxable property, which will be upheld if a classification is "sufficiently inclusive to constitute a distinctive class . . . ." *Opinion of the Justices,* 114 N.H. 174, 177, 317 A.2d 568, 570 (1974).

■ We have held that refined petroleum products constitute a sufficiently distinctive class for taxation. *Opinion of the Justices,* 114 N.H. at 177–78, 317 A.2d at 570. That in itself strongly suggests that the raw material from which they are derived is sufficiently distinct to be taxed. Oil facilities possess "a characteristic event not common to other property," and their separate taxation is constitutional. *Opinion of the Justices,* 114 N.H. at 178, 317 A.2d at 570.

■■ The classification between facilities according to storage capacity in effect creates an exemption for those facilities of less

than 500 barrels. If that distinction is reasonable, it is constitutional. *Opinion of the Justices*, 114 N.H. at 178, 317 A.2d at 570–71; *Opinion of the Justices*, 97 N.H. 533, 536, 81 A.2d 845, 848 (1951). This bill does not prohibit the state from aiding a smaller facility to clean up its spillage. But the legislature could conclude that such a facility would be more likely to be able to clean up its own spillage or that the small amount of oil that could be released would pose no substantial danger. Because the danger at which the bill is directed would arise principally from the larger facilities, the classification is constitutional.

■ A flat rate tax on each barrel of oil, regardless of the differing values among barrels purchased from various sources, is unconstitutional because unapportioned. *Opinion of the Justices*, 114 N.H. at 179, 317 A.2d at 571; *see Opinion of the Justices*, 82 N.H. at 563, 138 A. at 286. However, strictly construed, the proposed exaction is not a tax. A tax is an enforced contribution to raise revenue and not to reimburse the state for special services rendered to a given party. *Gunby v. Yates*, 214 Ga. 17, 19, 102 S.E.2d 548, 550 (1958); *In re Trust of Shurtz*, 242 Iowa 448, 454, 46 N.W.2d 559, 562 (1951). Our cases implicitly recognize this distinction. In *Opinion of the Justices*, 81 N.H. 552, 120 A. 629 (1923), we distinguished between a tax levied upon the privilege of selling gasoline and a charge exacted from motorists for using the state's highways, collected by imposing a price increment on gasoline at the pump, only the former being unconstitutional. The "tax" enacted by House bill 439 is more in the nature of a charge on oil facilities to reimburse the state for maintaining, and if necessary employing, pollution control equipment for their benefit. The monies collected from this tax do not go into the general fund revenues, but in fact the tax abates when the pollution control fund is sufficiently capitalized. Thus, House bill 439 imposes no "tax" in the sense employed by the constitution; hence, it need not be apportioned.

■ Finally, there is nothing in the law or the constitution to prevent this state's acceptance of federal funds in a scheme of cooperative federalism. This state participates in other such programs and uses federal highway funds. That provision of this bill poses no difficulties.

## II

Proposed House bill 439 is subject, as are all state enactments, to the limitations of the due process and equal protection clauses of the fourteenth amendment. Because New Hampshire contains no indigenous oil reserves, *see* 20 Encyclopedia Americana 165–68 (1970), the operator of any oil terminal facility subject to licensure and taxation under this bill must be engaged in interstate or foreign commerce. A license tax on the operator of such a facility is the equivalent of a tax on interstate or foreign commerce for purposes of constitutional analysis. *See, e.g., Complete Auto Transit v. Brady,* 430 U.S. 274 (1977); *Nippert v. City of Richmond,* 327 U.S. 416 (1946). We conclude that insofar as questions of law control, House bill 439 can withstand federal constitutional scrutiny.

A. *The due process clause.* Scrutiny of measures affecting only economic interests under the substantive aspect of the due process clause is narrow. *Opinion of the Justices,* 117 N.H. 533, 536, 376 A.2d 118, 120 (1977). Such a law is directed to furthering the public interest or general welfare is constitutional unless it is wholly irrational. *Opinion of the Justices,* 102 N.H. 106, 108, 151 A.2d 236, 238 (1959); *see Ferguson v. Skrupa,* 372 U.S. 726, 729–31 (1963). The proposed law would satisfy even a much higher standard. It is directed toward "coping with the problem of pollution from the spillage of oil" and the resulting damage to "vegetable, marine, animal and bird life." RSA 146-A:1 (Supp. 1975). State interest in the quality of its environment is long standing and traditional. *See The Minnesota Rate Cases,* 230 U.S. 352, 402–03 (1912); *Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 237–38 (1907). House bill 439 directly furthers this interest through the creation of a fund to finance the costs of hiring and paying personnel, purchasing and maintaining equipment to clean up oil spillage, and effecting the regulatory purposes of RSA ch. 146-A (Supp. 1975). Consequently, the proposed bill infringes on no substantive rights protected by the due process clause.

Such a finding does not terminate our due process inquiry. With regard to taxation of interstate business, "due process requires some definite link, some minimum connection between a state and the person, property or transaction sought to be taxed." *Miller Bros. v. Maryland,* 347 U.S. 340, 344–45 (1954).

This nexus requirement, however, is not difficult to satisfy. *See National Geographic Soc'y v. California Bd. of Equalization*, 430 U.S. 551 (1977). The contacts between this state and the licensees subject to tax are substantial. Only those who maintain facilities capable of transferring, processing, transporting or storing oil in New Hampshire are subject to tax liability. RSA 146-A:2 II (Supp. 1975). Those facilities derive the actual and substantial benefits of police and fire protection and port operations. This tax satisfies all norms of due process.

 B. *The equal protection clause.* The standard employed for review under the equal protection clause is similar to that of due process. Enactments that promote public health and safety and do not infringe on fundamental rights or create invidious classifications are valid if rationally related to the state's interest. *Opinion of the Justices*, 117 N.H. at 537, 376 A.2d at 120; *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). The general court could rationally conclude that only producers with a storage capacity over 500 barrels pose a substantial danger to New Hampshire's waters. The maximum spillage of those with a lesser capacity could be found relatively harmless and within the control of the polluter himself to remedy. The legislation may address itself to only that phase of a problem that appears most acute. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 (1954). The bill satisfies the demands of equal protection.

 C. *The supremacy clause.* As we have indicated, environmental protection is a traditional concern of the states. "A State is entitled to protect its coasts . . . unless there is conflict with some act of Congress." *The Minnesota Rate Cases*, 230 U.S. at 403. Thus even though House bill 439 affects both foreign and interstate commerce, the Constitution of its own force and effect will not preempt it.

 Congress has legislated in the field of water pollution control. Water Quality Improvement Act of 1970, 33 U.S.C.A. § 1321 *et seq.* (Supp. 1977). House bill 439 in no way impedes "the accomplishment and execution of the full purposes and objectives" of the Federal Act, *Hines v. Davidowitz*, 312 U.S. 52, 67 (1940), and accords with the congressional policy that primary right and responsibility to control pollution rests with the states. 33 U.S.C.A. § 1251(b) (Supp. 1977). The bill attempts to secure the costs that the state itself incurs in preparing for and actually cleaning up

oil spillage. As such, the bill complements the Federal Act and its constitutionality is supported by *Askew v. American Waterways, Inc.*, 411 U.S. 325, 330 (1973). *Askew* unanimously upheld against a preemption challenge a Florida law, Fla. Stat. § 376.011, that imposed strict liability for all damages sustained by the state or private persons as a result of oil spills.

■■ The Federal Water Quality Improvement Act in no way suggests the "clear and manifest" intent to preempt that the Court requires when Congress occupies an area traditionally regulated by the states. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Far from explicitly preempting any state act, section 1321(*o*) (2) provides that nothing in the federal statute should be interpreted to preempt "any [state] requirement or liability with respect to the discharge of oil or hazardous substance into any waters within such State." 33 U.S.C.A. § 1321(*o*) (2) (Supp. 1977); *see* H.R. Rep. No. 940, 91st Cong., 2d Sess. 42 (1970) (conference report).

■■■ D. *The commerce clause.* Congress has the undoubted power to authorize a state regulation that, in the face of congressional silence, would violate the negative impact of the commerce clause. *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 421–27 (1946). "The Federal Act does not preclude, but in fact allows, state regulation." *Askew v. American Waterways Operators*, 411 U.S. at 329. Nonetheless, the language of the statute only interdicts statutory preemption. 33 U.S.C.A. § 1321(*o*) (2) (Supp. 1977). The next subsection exempts from effect only those state laws that do not conflict with the Federal Act. *Id.* § 1321(*o*) (3). This falls short of explicit authorization. Consequently, House bill 439 must be measured against the commerce clause itself.

■■ The Supreme Court recently restated the test for reviewing state taxation of interstate commerce:

> [Our] decisions . . . have sustained a tax against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce and is fairly related to the services provided by the State.

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. at 279. The first prong of this test is identical to that required by due process, which

760

we have found satisfied. The second, apportionment, guards against the risk of multiple taxation of interstate commerce. *See General Motors Corp. v. Washington,* 377 U.S. 436, 440 (1964). Unlike taxes based on net or gross income, *see, e.g., General Motors Corp. v. District of Columbia,* 380 U.S. 553 (1965), a specific tax on a taxable activity within a state raises no dangers of multiple taxation because the exaction reaches only those activities that take place within the state. *Evco v. Jones,* 409 U.S. 91, 93 (1972) (per curiam); *Adams Mfg. Co. v. Storen,* 304 U.S. 307, 311 (1938). The storage of oil or its withdrawal from storage facilities are taxable events, even if the withdrawal is for purposes of transfer into interstate commerce. *Edelman v. Boeing Air Transp. Inc.,* 289 U.S. 249, 252 (1933); *Nashville, C. & St. L. Ry. v. Wallace,* 288 U.S. 249, 266–67 (1933). *Edelman* and *Wallace* sustained taxes of four and two cents per gallon respectively on the use of gasoline within the state. The Court held that the use involved in loading the gas into instrumentalities of interstate commerce was constitutionally taxable. These holdings were recently reaffirmed. *United Air Lines, Inc. v. Mahin,* 410 U.S. 623, 627–30 (1973).

A tax that discriminates against those involved in interstate commerce is unconstitutional whether that discrimination arises from the form of the tax or its practical effect. *Norfolk & W.R. v. Tax Comm'n,* 390 U.S. 317 (1968). The line drawn at 500 barrels might have the effect of discriminating against interstate commerce if that line differentiates domestic from foreign corporations. The fact that such a line satisfies the requirements of equal protection is not material to the commerce clause inquiry. The effect of the classification is solely a question of fact that the legislature must first decide based on the information available to it.

Finally, the tax is fairly related to the services provided by the state. As we noted above, the state provides police and fire protection for the facilities. It allows them to do business in a corporate form, *cf. Colonial Pipeline Co. v. Traigle,* 421 U.S. 100 (1975), and most importantly provides the equipment and services necessary to clean up oil spills. RSA 146-A:11 V (Supp. 1975). Thus the state provides real and substantial services for the money collected.

E. *The import-export clause.* Should any facilities licensed and taxed under House bill 439 handle oil directly imported

from a foreign source, the tax would implicate the import-export clause. *See Brown v. Maryland,* 25 U.S. (12 Wheat.) 419 (1827). A license tax on the importer of goods is precisely the type of provision voided in *Brown.* Yet, the tax will be constitutional if either an item has lost its character as an import or the state exaction is not an "impost" or a "duty". *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 296–97 (1976).

An item loses its character as an import after an initial sale or after breakup of the original shipping packages. *Id.* at 287. Therefore, any oil sold after importation but before any taxed transfer is constitutionally taxable. Once the imported oil is commingled with that of domestic origin in the same facility, it will be taxable. *See id.*

An "impost" is a duty that singles out an import as an import. *Brown v. Maryland,* 25 U.S. (12 Wheat.) at 443. The court recently held that a nondiscriminatory *ad valorem* tax on all property within the state was constitutionally applied to imported tires that had been added to the seller's inventory. *Michelin Tire Corp. v. Wages,* 423 U.S. 276 (1976). Although House bill 439 imposes a specific, not an *ad valorem* tax, it is sufficiently similar to the *Wages* tax to be supported by that holding.

Of course if the tax discriminates against foreign commerce in practice, it is unconstitutional whatever its justification. *See* 423 U.S. at 287–88 & n.7. That, again, is a question of fact that we cannot now determine.

### III

The answers to questions one and two are "Yes." The answer to question three is "No, to the extent that the tax does not in practice discriminate against foreign or interstate commerce." As to the fourth question, no violation of either Constitution is apparent on the face of the bill.

FRANK R. KENISON
EDWARD J. LAMPRON
WILLIAM A. GRIMES
MAURICE P. BOIS
CHARLES G. DOUGLAS III