Strafford
No. 78-277

ESTATE OF MICHAEL CARGILL
RUSSELL CARGILL, ADMINISTRATOR
AND
FATHER AND NEXT FRIEND OF
MICHAEL CARGILL

v.

THE CITY OF ROCHESTER

---

JOHN MICHAEL MULCAHY,
BY HIS FATHER AND NEXT FRIEND,
AND
JOHN J. MULCAHY, INDIVIDUALLY

v.

THE CITY OF ROCHESTER

August 20, 1979

*Snierson, Chandler & McKean,* of Laconia, by brief, for plaintiffs Cargill.

*Holland, Donovan, Beckett & Welch,* of Exeter (*Stephen G. Hermans* orally), for plaintiffs Mulcahy.

*Fisher, Parsons, Moran & Temple,* of Dover, and *William B. Cullimore,* of Farmington (*Mr. Cullimore* orally), for the city of Rochester.

BROCK, J. These companion petitions for declaratory judgment challenge the constitutionality of RSA 507-B:4 (Supp. 1977), which limits tort recovery from governmental units to $50,000 for bodily injuries sustained by one person.

In *Merrill v. City of Manchester,* 114 N.H. 722, 332 A.2d 378 (1974), this court prospectively abrogated the common law tort immunity of cities and towns. At that time we invited the legislature to take appropriate action. The legislature then enacted RSA ch. 507-B (Supp. 1977), effective July 1, 1975, defining and circumscribing the tort liability of certain governmental units other than the State itself. The plaintiffs contend that the statutory limitation on recovery is unconstitutional. We disagree.

On August 6, 1975, John Michael Mulcahy, then age twelve, and Michael Cargill, then age ten, were playing in the vicinity of an indoor swimming pool owned and operated by the city of Rochester as part of a municipal park. They entered a small unlocked wooden storage shed on city property, approximately twenty feet from the pool building, which contained a covered but unsealed fifty-five gallon drum, alleged to have contained methanol. One of the boys lit a match, whereupon the drum exploded and the shed was engulfed in flames. Both boys suffered second and third degree burns over more than sixty percent of their bodies. Michael Cargill died on September 6, 1975, from these injuries. John Mulcahy suffered permanent physical disabilities and disfigurement and required extensive medical treatment.

In November 1975, John Mulcahy and the Estate of Michael Cargill filed actions in negligence and strict liability against the city of Rochester, seeking damages of several million dollars in each case. The city, which has no insurance applicable to these actions, does not claim municipal immunity. It asserts, however, that RSA 507-B:4 (Supp. 1977) limits its maximum liability in each case to $50,000. The plaintiffs brought these petitions for declaratory judgment, seeking a determination that RSA 507-B:4 (Supp. 1977) is unconstitutional. The Trial Court (*Mullavey*, J.) transferred the case without a ruling.

Our decision in *Merrill v. Manchester*, 114 N.H. 722, 332 A.2d 378 (1974), abolished the judicially created bar of municipal immunity for reasons of policy, not on constitutional grounds. At that time we indicated that "the legislature has authority to specify the terms and conditions of suit against cities and towns, *limit the amount of recovery*, or take any other action which in its wisdom it may deem proper." *Id.* at 730, 332 A.2d at 384 (emphasis added). "Absent violation of constitutional rights, the legislature may control governmental immunity." *Brown v. Wichita State Univ.*, 219 Kan. 2, 7, 547 P.2d 1015, 1021, *appeal dismissed*, 429 U.S. 806 (1976). *See also Hardin v. City of Devalls Bluff*, 256 Ark. 480, 483, 508 S.W.2d 559, 563 (1974).

The plaintiffs first contend that the statute violates part I, article 14 of the New Hampshire Constitution, which provides:

Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it;

completely, and without any denial; promptly, and without delay, conformably to the laws.

The purpose of part I, article 14 was to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements on access to the courts. *State v. Basinow*, 117 N.H. 176, 371 A.2d 458 (1977); 8 Bravenic, *The New Hampshire Bill of Rights in the Constitution of 1784 and the Treatment of Dissenters During the American Revolution*, 8 N.H.B.J. 244, 248 (1966).

This court has held that the rights guaranteed by part I, article 14 "are necessarily relative." *Sousa v. State*, 115 N.H. 340, 343, 341 A.2d 282, 284 (1975); *Opinion of the Justices*, 113 N.H. 205, 209, 304 A.2d 881, 885 (1973). The article does not prohibit all impairments of the right of access to the courts. *Compare State v. Cushing*, 119 N.H. 147, 399 A.2d 297 (1979) *with State v. Basinow supra.*

Part I, article 14 does not guarantee that all injured persons will receive full compensation for their injuries. *Cf. Hackett v. Perron*, 119 N.H. 419, 422, 402 A.2d 193, 195 (1979). Where there exist compelling public policy reasons, a person injured by the negligence of another is in some instances barred from recovery altogether. *See*, *e.g.*, RSA 508:12 (Supp. 1977). Similarly, the legislature has established limits on the amount of recovery in various actions, including medical malpractice, RSA 507-C (Supp. 1977), and wrongful death, RSA 556:13. We are not prepared to hold that all such limitations on the amount of recovery violate the constitutional rights of New Hampshire citizens. *See Sousa v. State supra; cf. Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59 (1978) (nuclear power plant accidents, U.S. CONST. amend. V); *New York Central R.R. v. White*, 243 U.S. 188, 201 (1917) (workmen's compensation).

The plaintiffs' second argument is that RSA 507-B:4 (Supp. 1977) denies them equal protection of the laws, in that it improperly creates different opportunities for recovery for victims of torts of the specified governmental units than for victims of private tortfeasors. The equal protection clause mandates that "those who are similarly situated be similarly treated." *Belkner v. Preston*, 115 N.H. 15, 17, 332 A.2d 168, 170 (1975); U.S. CONST. amend. XIV; N.H. CONST. pt. I, art. 1.

The threshold question is whether this statute unreasonably distinguishes between persons who in fact constitute a "natural class." *See Reich v. State Highway Dep't*, 386 Mich. 617, 623, 194 N.W.2d 700, 702 (1972). From the city's perspective, the statute treats alike anyone

with a bodily injury claim against it or against any other specified governmental unit. We could avoid any equal protection problem by defining a class so small that everyone within it receives equal treatment.

From the plaintiff's perspective, however, the statute does distinguish between persons similarly, if not identically, situated. *See Reich v. State Highway Dep't supra*. The plaintiffs here can easily demonstrate that, except for the fortuity of the identity of the tortfeasor, their situation is the same as if the explosion and fire had occurred on privately owned property. There is no question here of a plaintiff being treated differently because of his own status. *See, e.g., Levy v. Louisiana*, 391 U.S. 68 (1968). This statute affords certain plaintiffs different legal rights solely because of the identity or status of the defendant.

It is equally clear, however, that "there *are* real and vital differences between the situations of governmental units and of private parties as potential tort defendants." Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan*, 72 MICH. L. REV. 187, 272 (1973) (emphasis in original). The threat of tort liability acts as an incentive for persons engaged in various activities to take steps to reduce the risk of injuries. *See* Calabresi, *Optimal Deterrence and Accidents*, 84 YALE L.J. 656 (1975). In the public sector, citizens can participate in the decisions that create the risk of injuries, including the selection and disciplining of public employees. *See* RSA ch. 273-A; N.H. CONST. pt. I, art. 8 (Supp. 1977). In the private sector, in contrast, the ability of the general public to influence safety decisions or employee conduct is much more limited. A municipality's decision whether to purchase insurance that provides coverage above the statutory level, RSA 412:3 (Supp. 1977), can also be influenced by the views of its residents, the persons most in danger of sustaining bodily injuries as a result of the city's actions. Finally, a person who recovers judgment against one of the governmental units enumerated in the statute does not run the risk that no money will be available to pay the judgment. RSA 507-B:8 (Supp. 1977); RSA 412:3 (Supp. 1977). The question is whether these functional differences between governmental units and other tortfeasors are sufficient to sustain the legislature's differential treatment of them.

■ The plaintiffs argue that RSA 507-B:4 must be subjected to "strict scrutiny" because it touches a fundamental right, namely the right to recover for one's injuries. *Cf. Shapiro v. Thompson*, 394 U.S. 618, 638 (1969). We cannot accept this analysis. "Virtually every state statute affects important rights." *Id.* at 661 (Harlan, J., dissenting).

This court recently held that a statute limiting a person's ability to practice her profession, which for some purposes may be a "fundamental right," was to be evaluated using the less stringent "rational basis" test. *Richardson v. Brunelle*, 119 N.H. 104, 398 A.2d 838 (1979). In *State v. Piper*, 117 N.H. 64, 369 A.2d 199 (1977), we applied the "rational basis" test to a statute criminalizing the possession of certain weapons, despite the fact that such statutes "touch on" the right to bear arms. U.S. CONST. amend. II.

Finally, we held in *Belkner v. Preston*, 115 N.H. 15, 332 A.2d 168 (1975), concerning the limitations period for survival actions, RSA 556:10, that "[t]he procedural qualification of a citizen's access to the courts in civil matters" was not a "fundamental interest" triggering strict scrutiny. *Id.* at 18, 332 A.2d at 171. Where, as discussed above, the statute under consideration does not directly violate part I, article 14 of our constitution, we fail to see how it could violate the same constitutional provision indirectly under the guise of equal protection analysis. *See Duke Power Co. v. Carolina Envir. Study Group*, 438 U.S. 59, 93 (1978); *Shapiro v. Thompson*, 394 U.S. 618, 643 (1969) (Stewart, J., concurring).

Nor does RSA 507-B:4 create the type of suspect classification that demands strict scrutiny. Many laws "affect certain groups unevenly." *Personnel Adm'r v. Feeney*, 99 S.Ct. 2282, 2292 (1979). Any statute that confers either benefits or burdens necessarily creates a class of persons who may be worse off as a result of the legislation than they would have been without it. It has been said that "[e]very line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial function." *Village of Bell Terre v. Boraas*, 416 U.S. 1, 8 (1974). Absent invidious discrimination, however, the mere existence of a classification does not justify this court in overturning the action of the elected legislature on equal protection grounds. *See Parham v. Hughes*, 99 S.Ct. 1742 (1979). The class of persons who will at some time find themselves burdened by this statutory limit on liability is essentially random. The members could not be determined at the time the statute was enacted or indeed at any time before each of them sustains a major injury. Because the statute does not abridge a fundamental constitutional right or adversely affect a suspect class, "the sole requirement is that the challenged classification rationally relates to a legitimate state interest." *Opinion of the Justices*, 117 N.H. 533, 537, 376 A.2d 118, 120 (1977); *see McGowan v. Maryland*, 366 U.S. 420, 426–28 (1961).

 The legislature's goal in enacting RSA ch. 507-B, in the wake of this court's decision in *Merrill v. Manchester*, 114 N.H. 722, 332 A.2d 378 (1974), was to define in a comprehensive manner the liability to which governmental units would be exposed, thus enabling cities and towns to plan for the risk of such liability. In enacting RSA 507-B:4, the legislature limited the financial strain to be imposed on certain governmental units by large judgments or high insurance premiums. The State "may legitimately attempt to limit its expenditures" or those of its subordinate units, so long as it does not create "invidious distinctions between classes of its citizens." *Shapiro v. Thompson*, 394 U.S. 618, 633 (1969); *Nadeau v. Helgemoe*, 561 F.2d 411, 417 (1st Cir. 1977). "[T]he wisdom and expediency of statutes are not subject to judicial review." *Opinion of the Justices*, 117 N.H. 533, 536, 376 A.2d 118, 120 (1977).

 It is argued that the limitation on recovery here is arbitrary and irrational when considered together with the different amounts available in actions against other government agencies. *See* RSA 110-A:81 (National Guard, $250); RSA 229:8-a (Supp. 1977) (state public works and highways, $300); RSA 541-B:12–14 (Supp. 1977) (State, $10,000, $20,000, or $50,000 depending on type of claim and legislative goodwill); RSA 491:8 (State, contracts, no limit); *accord, Harvey v. Clyde Park District*, 32 Ill. 2d 60, 203 N.E.2d 573 (1965). It may still be true that the rules governing actions against governmental units are " 'as logical as those governing French irregular verbs.' " *Gossler v. City of Manchester*, 107 N.H. 310, 315, 221 A.2d 242, 245 (1966) (Kenison, C.J., dissenting). In enacting a particular statute, however, the legislature "may address itself to only that phase of a problem that appears most acute," *Opinion of the Justices*, 117 N.H. 749, 758, 379 A.2d 782, 788 (1977), even if the net result resembles a crazy quilt more than a carefully balanced sculpture. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 (1955). The equal protection clause does not require mathematical equivalence. *Richardson v. Brunelle*, 119 N.H. 104, 107, 398 A.2d 838, 840–41 (1979); *see Dandridge v. Williams*, 397 U.S. 471, 485 (1970).

 The plaintiffs have alleged that the $50,000 limitation on recovery violates due process because it is harsh and unreasonable compared to their alleged damages of $3,070,000 and $5,000,000. The legislature does not have complete discretion to set "any scale of compensation, however insignificant on the one hand or onerous on the other." *New York Central R.R. v. White*, 243 U.S. 188, 205 (1917). Given the soaring costs of medical services, legal expenses, and other

damages likely to be sustained by tort victims, we concede that a $50,000 statutory limitation on tort recoveries is precariously close to the boundary of acceptability. We are not prepared to say, however, that it is so severe as to be "very wide of any reasonable line of demarcation." *Opinion of the Justices*, 113 N.H. 205, 213, 304 A.2d 881, 887 (1973).

This court has already expressed its belief:

> That an individual injured by the negligence of the employees of a municipal corporation should bear his loss himself . . . instead of having it borne by the public treasury to which he and all other citizens contribute, offends the basic principles of equality of burdens and of elementary justice.

*Merrill v. City of Manchester*, 114 N.H. 722, 724, 332 A.2d 378, 380 (1974). We concur with President Abraham Lincoln that "[i]t is as much the duty of Government to render prompt justice against itself in favor of citizens as it is to administer the same between private individuals." First Annual Message, *quoted in Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 580 (1946) (Frankfurter, J., dissenting). Absent constitutional violations, however, we are reluctant to substitute our judgment for that of the elected legislature regarding what constitutes a reasonable limitation on tort recoveries for bodily injury against governmental units. We urge the legislature to review periodically all statutory limitations of recovery, including the one at issue here, to insure that inflation and political considerations do not lead to inequitable disparities in treatment.

Accordingly, we hold that the $50,000 statutory limit on recovery against municipalities and other governmental subdivisions is not unconstitutional. *Accord, Consoli v. Municipio de San Juan*, 408 F.Supp. 384 (D.P.R. 1975) ($15,000/$30,000); *Seifert v. Standard Paving Co.*, 64 Ill. 2d 109, 355 N.E.2d 537 (1976) ($100,000); *State v. Silva*, 86 Nev. 911, 478 P.2d 591 (1971) ($25,000); *Sambs v. City of Brookfield*, 66 Wis. 2d 296, 224 N.W. 2d 582 (1975) ($25,000); WYO. ATTY. GEN. OP. No. 79-003 (January 30, 1979); 47 U.S.L.W. 2525 (February 20, 1979).

*Remanded.*

DOUGLAS, J., dissented; the others concurred.

DOUGLAS, J., dissenting: Equal protection of the laws mandates "that those who are similarly situated be similarly treated." *Belkner v. Preston*, 115 N.H. 15, 17, 332 A.2d 168, 170 (1975). The class of persons similarly situated are those who suffer injury to their life, liberty, or property at the hands of a municipality or its agents. The New Hampshire Constitution equally guarantees to our citizens "natural, essential, and inherent rights" of "life and liberty; acquiring, possessing, and protecting property." N.H. CONST. pt. 1, art. 2. It makes no distinction or hierarchical scale of values for the three rights.

When a citizen is injured he seeks to vindicate those rights by recourse to the courts. If the injury by the municipality is to his *liberty* interests or civil rights, he may file suit for redress in our State courts against a municipality pursuant to 42 U.S.C. § 1983 (1976). *MBC, Inc. v. Engel*, 119 N.H. 8, 397 A.2d 636 (1979); *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). There is no dollar limit to recovery and any judgment will be paid by the municipality in full. RSA 31:106 (Supp. 1977). If a municipal water works or electric utility causes massive *property* damage, there is no limit to recovery under RSA ch. 507-B. However, for some inexplicable reason, if *bodily* injury occurs due to the negligence of the municipality there is a fifty thousand dollar limit on recovery.

The constitution provides equally for a remedy to citizens for injuries to "person, property or character." N.H. CONST. pt. I, art. 14. No distinction is made based upon the nature of the injury, nor can the legislature constitutionally make such a distinction for the class of persons injured by municipalities. Because there is no rational basis for the bodily injury limit of RSA 507-B:4 (Supp. 1977), the statutory limit violates equal protection of the laws. *See Harvey v. Clyde Park District*, 32 Ill. 2d 60, 203 N.E.2d 573 (1965). The legislature seems to be saying to our citizens that it values their persons *less* than it does their property or character. Such a distinction to me is patently a violation of N.H. CONST. pt. I, arts. 2 and 14.